**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LORI LAROCK, *as Administratrix of the Estate of* ROGER A. SANFORD,

                            Plaintiff,

      v.                                                                      1:19-CV-0604
                                                                        (GLS/DJS)

ALBANY COUNTY NURSING HOME, *et al.*,

                            Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| EMERY CELLI BRINCKERHOFF, ABADY, WARD, & MAAZEL LLP<br>Attorneys for Plaintiff<br>600 Fifth Avenue, 10th Floor<br>New York, NY 10020 | DAVID BERMAN, ESQ.<br>ILANN MAAZEL, ESQ. |
| BURKE, SCOLAMIERO & HURD, LLP<br>Attorneys for Defendants<br>7 Washington Square<br>Albany, NY 12205 | THOMAS A. CULLEN, ESQ.<br>JESSICA L. DARROW, ESQ.<br>STEVEN DeBRACCIO, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

### I.  PROCEDURAL HISTORY

     On May 21, 2019, Plaintiff filed the present lawsuit in United States District Court as Administratrix of the Estate of her father, Roger Sanford.  Dkt. No. 1. Compl.  An Amended Complaint was filed shortly thereafter and is now the operative pleading.  Dkt. No. 12, Am. Compl.  According to the Amended Complaint, Mr. Sanford was, prior to

his death at a local hospital, a resident at the Albany County Nursing Home. Am. Compl. at ¶ 25. Plaintiff, as Administratrix,[1] makes a claim under the Substantive Due Process Clause of the Fourteenth Amendment alleging that the Defendants were deliberately indifferent to the health and safety needs of her father, resulting in his death. Am. Compl. at ¶¶ 223-231. Plaintiff also brings a § 1983 action, alleging violations of the Federal Nursing Home Reform Amendments, 42 U.S.C. §§ 1396 *et seq.*, and 42 C.F.R. §§ 483.1, *et seq*. Am. Compl. at ¶¶ 232-240. The remaining claims in the Amended Complaint are brought under state law, and include claims for medical malpractice, negligence, and a claim under New York Public Health Law § 2801-d. Am. Compl. at ¶¶ 241-263. Defendants have answered the Amended Complaint and denied the substantive allegations. Dkt. No. 29.

As the case has progressed through discovery, a dispute has now arisen regarding the proper scope of discovery, particularly with respect to Plaintiff and her husband's invocation of the marital privilege in response to certain questions asked at their depositions. Dkt. No. 77. On February 3, 2022, an initial conference was held with the Court on this issue, followed by, at the Court's request, written submissions. See Dkt. Nos. 77 & 78. This Decision and Order follows.

---

[1] Plaintiff makes no claim on her own behalf.

## II. DISCUSSION

## A. Spousal Privilege

In civil cases where federal law controls, a privilege exists with respect to confidential marital communications.[2] *E.g. United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019). As correctly noted by the parties, the three elements necessary to invoke the privilege are: (1) that the two individuals were in fact married at the time of the communication; (2) that what is at issue is in fact a communication, i.e., an utterance or expression intended by one spouse to convey a message to the other; and (3) that the communication was made in confidence. FED. R. EVID. § 501; *U.S. v. Pugh*, 945 F.3d at 18; *In re Witness Before Grand Jury*, 791 F.2d 234, 238 (2d Cir. 1986). The marital privilege can be invoked by either spouse. *United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067, 1070 (2d Cir. 1995). As to the third element, "[c]ommunications between . . . spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged." *Wolfle v. United States*, 291 U.S. 7, 14 (1934). This presumption may be overcome by a showing that the communications were not intended to be private, either because the communication occurred in the presence of a third party, or because the communicating spouse intended to have the message transmitted to a third party. *Pereira v. United States*, 347 U.S. 1, 6 (1954). "[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2003).

---

[2] The Court need not address the second aspect of the privilege, the adverse spousal testimonial privilege, as that is only applicable to testimony during criminal proceedings. *See Scott v. Woodworth*, 2012 WL 3338574, at *8 (N.D.N.Y. July 2, 2013).

- 3 -

However, as confidentiality is presumed, the party challenging the applicability of the privilege "[bears] the burden of defeating this presumption by showing that the communication was not made privately." *United States v. Taylor*, 92 F.3d 1313, 1332 (2d Cir. 1996).

When applied, the marital privilege works as an impediment to providing the requesting party the sought-after information, but it is based on a foundation similar to that anchoring the attorney-client or psychotherapist-patient privilege: protecting the underlying relationship. *Trammel v. United States*, 445 U.S. 40, 51 (1980) ("These privileges are rooted in the imperative need for confidence and trust."). As stated by the Justice Stone: "The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle v. U.S.*, 291 U.S. at 14.

### B. Factual Background

Putting the present discovery dispute in its proper factual context, Plaintiff alleges that she and her family had initially placed her father into the care of the Albany County Nursing Home on or about August 2017. Am. Compl. at ¶ 25. At that time Mr. Sanford was in poor health, suffering from Alzheimer's and multiple forms of heart disease. *Id.* at ¶¶ 26-27. The family had concerns regarding Mr. Sanford's care at the nursing home, noting that he lost almost 20 pounds in his first four months, and that the facility allegedly failed to feed him, to provide him with proper supervision for his nebulizer treatments, and to otherwise care for him. *Id.* at ¶¶ 28-37. According to the pleadings, complaints

were made by the family to the facility staff and administration, but no improvements in the care of Mr. Sanford were implemented. *Id.* at ¶¶ 38-81.

On February 24, 2018, Plaintiff noted during a visit that her father did not seem like himself, that he had thrown up in his bed, and was having difficulty breathing. *Id*. at ¶ 57. Plaintiff alleges that she made a request to have her father sent to the hospital, but was refused, and her complaints via phone and email to Defendant Slatky went unanswered. *Id.* at ¶¶ 57-81. On March 1, 2018, at approximately 6 P.M., Plaintiff was advised by the Facility that her father was ill. *Id*. at ¶ 84. She went to the Albany County Nursing Home and found her father unattended and in critical distress. *Id*. at ¶ 89-122. She called 911 herself. *Id.* Mr. Sanford was taken to the hospital, and ultimately passed on March 3, 2018. *Id*.

Plaintiff Lori LaRock was deposed on January 6, 2021 and confirmed her marriage to Mark LaRock. Dkt. No. 77-2 at p. 15. She testified at length regarding the medical history of her father, the decision to place her father in a nursing home, the prior facilities that her father resided at, the subsequent decision to place her father at the Albany County Nursing Home, and his care and treatment while at the various facilities. *Id.* at pp. 27-267. During the second half of the deposition Plaintiff was asked specifically about the events that occurred in late February of 2018. As to one night, Plaintiff testified that her husband Mark had visited and seen her father on February 26 but that she had not. *Id.* at p. 198. Defense counsel then asked Plaintiff what her husband had said to her about how her father was doing on that day, and at that point counsel for the Plaintiff invoked the

marital privilege. *Id*. at 198-99. No request for Court intervention was made at that time, and the deposition proceeded to its conclusion.

Approximately a year later, Plaintiff's husband, Mark LaRock, was deposed. As part of the deposition questioning, Mr. LaRock was asked whether he had ever spoken with his wife regarding her father's care, and at that point the counsel defending the deposition raised the spousal privilege regarding any comments made between husband and wife outside the presence of any third party. Dkt. No. 77-1 at p. 73. Counsel for the Albany County Defendants took the position that the marital privilege did not apply to any communications regarding the care and treatment of Mr. Sanford, as that was put in issue as a central part of the litigation and thus not confidential. *Id*. at pp. 73-75.

As part of the submissions to the Court in connection with the present Letter-Motion, counsel for the Defendants attached Plaintiff's March 28, 2018 supporting deposition that was provided to the Colonie Police Department in connection with Plaintiff's criminal complaint to that agency. Dkt. No. 77-3. In addition, there was a follow-up email from Plaintiff to police officials which included additional information, and contained the following paragraph:

> On Tuesday, February 27 my husband Mark went to see my dad to check on him and make sure that he eats. Mark told me that my dad projectile vomited and that my dad is real sick. My dad was not provided proper medical help, he still was not taken to the hospital as requested.

Dkt. No. 77-4 at p. 2.

## C. Arguments

In their letter brief, Defendants make several assertions in opposition to the claim of privilege. Dkt. No. 77. First, Defendants assert that Plaintiff and her husband have, in effect, waived any marital privilege vis-à-vis their discussions regarding the Defendants' care and treatment of Roger Sanford because of the initiation of this lawsuit. Dkt. No. 77 at p. 3. Accordingly, counsel argues that they should be able to ask both husband and wife about any conversations they had regarding Plaintiff's father.

Second, Defendants assert that there was also a waiver of the privilege because Plaintiff and her husband visited the nursing home separately and then shared information with each other as to their perception of Mr. Sanford's care. Dkt. No. 77 at pp. 3, 4. Accordingly, "defendants should be entitled to question the witnesses regarding these conversations." *Id.* at p. 3. In Defendant's view, it would be fundamentally improper for Plaintiff to rely upon information provided to her by her husband regarding her father's care and treatment, and then refuse to testify about those conversations. *Id.* at p. 4.

Third, Plaintiff asserts that there was no confidentiality regarding any of the statements between Mr. and Mrs. LaRock because they were shared to a third party, namely, the Colonie Police, or otherwise made in the presence of another, unidentified third party. *Id.* at p. 4.

Defendants claim that information contained in the sought-after spousal conversations are likely material to three central issues in the lawsuit: (1) whether the defendant "controlled" the decedent sufficient to trigger the deliberate indifference test;

(2) whether Plaintiff interfered with the Defendant's ability to care for decedent; and (3) whether decedent was provided with appropriate care and treatment.  *Id.* at p. 4.

For their part, Plaintiff's counsel maintains that the marital privilege is applicable; that the privilege was raised only as to conversations occurring outside the presence of third parties, and so the communications are therefore presumed to be confidential; that Plaintiff's commencement of the lawsuit did not waive the privilege; that disclosures to the police did not constitute a waiver of the privilege; and that the information sought is simply not relevant to any issues in the case.  Dkt. No. 78.

### D. Analysis

With limited exceptions,³ the mere commencement of a lawsuit does not in itself waive a privilege regarding confidential conversations, even where such communications might be relevant to the case.  "[T]hat a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect."  *Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518–19 (S.D.N.Y. 2017) (quoting *Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.,* 43 A.D.3d 56, 64 (1st Dep't 2007).  Rather, under both state and federal law, an 'at issue' waiver occurs when the party asserts a claim or defense which he or she intends

---

³ In New York for example, a statutory exception to the privilege for confidential communications between spouses is contained in Family Court Act § 1046(a)(vii), which eliminates the privilege in proceedings for child abuse or neglect. Similarly, Social Services Law § 384-b(3)(h) abrogates the privilege in proceedings for guardianship and custody of destitute or dependent children. A judge-made exception of long-standing vintage applies where criminal activity, even if conducted in private, is directed at the spouse or one of their children.  *See* Vincent C. Alexander, Practice Commentary, McKinney's Cons Laws of NY, C.P.L.R. 4502.

to prove by use of the privileged materials, or where the privileged information or documents are indispensable to a party's claim or defense. *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010), *objections overruled*, 2011 WL 2946380 (S.D.N.Y. July 14, 2011). In the present matter, Plaintiff's counsel has confirmed that the claim presented relates only to the actual care and treatment received by Mr. Sanford, and that this claim is in no way based on any conversations that Mr. and Mrs. LaRock may have had with each other. Dkt. No. 78. The Court agrees. *Terán v. Mut. Sec. Credit Union,* 2017 WL 11477128, at *4 (D. Conn. Sept. 29, 2017) ("It cannot be the case that a party who confidentially shares worries with his spouse about his employer's potential violation of federal law, and who ends up bringing a lawsuit related to these violations, has agreed to share the substance of his conversations with the Court.").

Defense counsel's reliance on *United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury*, N.Y., 71 F.3d 1067, 1068 (2d Cir. 1995) is not persuasive when applied to the facts at bar. In that case, the wife of a convicted drug dealer was seeking to oppose the Government's civil forfeiture of her family's home, and she put her own subjective state of mind specifically at issue as an affirmative defense. *U.S. v. Premises Known as 281 Syosset, Woodbury Road*, N.Y. 71 F.3d at 1068 ("Mrs. Camiola asserted a defense of innocent ownership, pursuant to 21 U.S.C. § 881(a)(7), claiming that she had not known of her husband's illegal activities between his release from prison in 1987 and his second arrest in 1990."). Further, the spouse testified willingly regarding confidential conversations that she had with her husband *prior* to his arrest. *Id*. at 1072.

Under those unique circumstances, the Second Circuit upheld the District Court's conclusion that the privilege had been waived. *Accord, Prink v. Rockefeller Ctr., Inc.*, 48 N.Y.2d 309, 314-15 (1979) (In a statutory wrongful death action brought under EPTL § 5-4.1, both the spousal privilege and doctor-patient privilege were waived by the plaintiff's affirmative act in bringing suit where the decedent's allegedly accidental fall from a 36th story window was sufficiently equivocal to necessitate disclosure of his mental condition prior to death.).[4]

In the present case, Plaintiff has not in any way placed her own marital communications or mental condition at issue. She is not suing for her emotional trauma or for her loss of consortium. She is not using the communications with her husband Mark as both a sword and a shield, and indeed is not using them at all. She is merely the Administratrix suing on behalf of the Estate for the Decedent's claim that Defendants mistreated him, and therefore she has not waived any privilege that is unique to her. In a similar circumstance, it is well-settled that a representative of an estate who brings a wrongful death action may well have waived the *decedent's* privilege relating to medical records and care, but there is no authority for the proposition that, simply by virtue of holding that representative position, the administratrix simultaneously waives *her own* doctor-patient privilege. *Scalone v. Phelps Mem'l Hosp. Ctr.*, 184 A.D.2d 65, 73 (1992). The same rationale applies in maintaining the spousal privilege in this matter.

---

[4] Under the unique circumstances of that case and the statutory dictates of EPTL § 5-4.1, in order to succeed in the wrongful death action, the plaintiff spouse was required to establish that the decedent himself could have brought the same action had he survived. Therefore, whether the injuries resulted from suicide rather than negligence was both a central and dispositive issue to the case, making the decedent's state of mind a matter of utmost importance. *Prink v. Rockefeller Ctr.*, 48 N.Y.2d at 315.

Nor is there any unfairness in upholding the privilege under the facts of this case. Defense counsel has had full and fair opportunity to question both the Plaintiff and her husband regarding what they saw and observed during the many times when they visited Mr. Sanford at the Albany County Nursing Home. Counsel had the ability to ask both Plaintiff and her husband whether they considered moving Mr. Sanford out of the Albany County Nursing Home, insofar as they consider that issue relevant. Defense counsel has deposed close family members, including Plaintiff's son, daughter, sister-in-law, and her close friend and co-worker. Dkt. No. 78 at p. 3. Defense counsel had a complete opportunity to review all the appropriate medical records, and to question those individuals charged with providing the proper care of the decedent, many of whom are counsel's own clients. Having had such an opportunity to question the witnesses firsthand about their personal observations, it is difficult for this Court to see the proportional relevance of a series of additional questions concerning exactly what one spouse told the other regarding nursing home visits, about which they have already testified. At most, the sole plausible purpose would be to attempt to impeach one spouse as having a differing recollection about what the other spouse allegedly told him or her, which, though not outside the realm of possibility, would be both of marginal relevance and destructive to the marital relationship. There is no legal or logical reason to proceed down that path. Therefore, the Defendants' general waiver argument is rejected.

Defendants' other arguments regarding relevance are also incorrect. For example, the "control" issue raised by Defendants only relates to due process theory regarding a state's affirmative duty to protect someone in a custodial or quasi-custodial status from

injury at the hands of a third party, *see DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), which is not the situation here as the alleged tortfeasors are admittedly governmental employees.  Judge Sharpe has previously ruled on this very issue, Dkt. No. 27, March 31, 2020, Memorandum-Decision and Order, at pp. 8-16, so the continued reliance on this rejected claim of liability is disconcerting.  Nor are the private communications of spouses relevant to whether decedent was provided with appropriate care, as that is a determination to be made based upon the actual care provided to the decedent, and not a litigant's perception as conveyed to her spouse.  Finally, the issue of the Plaintiff's alleged interference with the decedent's care and treatment, in so far as it exists, can be testified to by the individuals who were present when the Plaintiff was responding to her father's condition.

The final argument of defense counsel, however, does have some merit. In the Court's view, the fact that the Plaintiff voluntarily reported her conversation with her husband regarding his observations on February 27, 2018 to the Colonie Police, is sufficient to show that, as to that specific conversation, the presumption of confidentiality has been overcome.  Therefore, the marital privilege is not a bar to inquiry on this conversation.  Proportional relevance, however, is.  Insofar as the Plaintiff, as decedent's distraught daughter, sought to have criminal charges filed against the staff of the nursing home, that is an issue which is wholly separate from, and irrelevant to, the fact-based medical dispute that is presented in this civil case.  Counsel has already had the opportunity to question Plaintiff and her husband regarding what they observed, did, and said, and is in possession of the police statements and the relevant emails.  Considering

the needs of the case, the discovery conducted to date, and the salient issues, the Court has exercised its discretion and concludes there is no need for additional discovery on this issue.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Letter-Motion objecting to the Plaintiff and her Husband's invocation of the spousal privilege and seeking to compel Lori and Mark LaRock to testify regarding private conversations that they had with each other, (Dkt. No. 77) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated: April 7, 2022
       Albany, NY

_____
Daniel J. Stewart
U.S. Magistrate Judge