**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

LORI LAROCK, as Administratrix of the Estate of
ROGER A. SANFORD,

                          Plaintiff,

      v.

ALBANY COUNTY NURSING HOME; THE COUNTY
OF ALBANY; LARRY SLATKY; DEBBIE GOSSMAN;
RHONDA LYGA; JOHN AND JANE DOES #1-5,

                        Defendants.

                          1:19-CV-0604 (AMN/DJS)

———————————————————————

**APPEARANCES:**               **OF COUNSEL:**

**EMERY CELLI BRINCKERHOFF,**   **ILANN MARGALIT MAAZEL, ESQ.**
**ABADY, WARD & MAAZEL LLP**     **HANNAH BRUDNEY, ESQ**
600 Fifth Avenue, 10th Floor
New York, NY 10020
*Attorneys for Plaintiff*

**BURKE, SCOLAMIERO & HURD, LLP**  **JESSICA LYNNE DARROW, ESQ.**
7 Washington Square                **KEVIN P. BURKE, ESQ.**
P.O. Box 15085                   **MONIQUE B. MCBRIDE, ESQ.**
Albany, NY 12212-5085
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On May 21, 2019, Plaintiff Lori LaRock ("Plaintiff") commenced this action.  In her

Amended Complaint, Plaintiff alleges substantive due process claims pursuant to 42 U.S.C. §

1983, violations of the Federal Nursing Home Reform Act § 1396r and the New York State Public

Health Law § 2801-d, and common law medical malpractice and negligence against Albany

County Nursing Home ("ACNH"), the County of Albany, Larry Slatky, Debbie Gossman, Rhonda

Lyga, and John and Jane Does #1-5 (collectively "Defendants").  Dkt. No 12.  On March 29, 2024, the Court granted in part Defendants' motion for summary judgment and dismissed the claims based on substantive due process pursuant to 42 U.S.C. § 1983 and common law negligence.  Dkt. No. 133.

Trial is set to commence on October 28, 2024.  Dkt. No. 136.  Presently before the Court is Defendants' motion *in limine*, Dkt. No. 145, Plaintiff's motion *in limine*, Dkt. No. 149, Plaintiff's response in opposition to Defendants' motion *in limine*, Dkt. No. 164, and Defendants' response in opposition to Plaintiff's motion *in limine*, Dkt. No. 162.  Also before the Court is Defendants' motion to quash the trial subpoenas of Marianne Novak and Sue Wyld, Dkt. No. 144, and Plaintiff's response in opposition to the motion to quash, Dkt. No. 163.  For the reasons set forth below, Defendants' motion *in limine* and Plaintiff's motion *in limine* are each granted in part, denied in part, and reserved in part.  Defendants' motion to quash is denied.

## II.    STANDARD OF REVIEW

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context."  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287).  Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds."  *Luce*,

469 U.S. at 41.  The moving party bears the burden of establishing that evidence is inadmissible

for any purpose and so properly excluded on a motion *in limine*.  *See United States v. Pugh*, 162

F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

## III.     DISCUSSION

Plaintiff and Defendants each set forth several arguments seeking to limit the evidence to

be presented at trial.

### A.       Plaintiff's Motion *in Limine*

Plaintiff seeks to exclude and/or limit (i) evidence of Mr. Sanford's treatment at prior

nursing homes, (ii) evidence of Mr. Sanford's alleged prior sexually inappropriate comments to

nursing staff, (iii) conversations between Lori LaRock and Mark LaRock, Sr., (iv) evidence

concerning the results of the Colonie Police Department's Investigation of Mr. Sanford's death

and the opinions of the investigator, (v) Dr. Steven Salzman's expert testimony, and (vi) Beth

Anne Maas's expert testimony.  Dkt. No. 149.  The Court addresses each argument in turn.

### i.     Mr. Sanford's Treatment at Prior Nursing Homes and Complaints

First, Plaintiff argues that evidence of Mr. Sanford's treatment at prior nursing homes and

the Plaintiff's complaints about such treatment should be excluded.  Dkt. No. 149 at 5.  Plaintiff

argues that such evidence is 1) irrelevant, 2) prejudicial, and 3) impermissible character evidence.

*Id.*  As to relevance, Plaintiff argues that Mr. Sanford's treatment and experiences at two prior

nursing homes should be excluded per Fed. R. Evid. ("FRE") 401 and 402 because such

experiences "involved unrelated parties and occurred at different points in time" and "will reveal

nothing about his treatment at Albany County Nursing Home."  *Id.*  On prejudice, Plaintiff asserts

that "the prejudicial impact of such evidence far outweighs any probative value it may have"

because it might suggest Plaintiff is a serial complainer and will involve a series of mini-trials on

Mr. Sanford's prior treatment. *Id.* at 6. Finally, Plaintiff argues that the evidence will be used as impermissible character evidence to suggest Ms. LaRock has a propensity to file complaints. *Id.*

In response, Defendants argue that the evidence is relevant because "decedent's entire medical condition has been put into question" as a result of the medical malpractice claim and that such evidence, including evidence of Mr. Sanford's inappropriate and aggressive behavior, is crucial to establishing Mr. Sanford's condition. Dkt. No. 162 at 2-3. Defendants also argue that the evidence of Plaintiff's complaints is not inadmissible character evidence put forward to show propensity, but instead, "[e]vidence of any other . . . wrong, or act[]" which may be admissible for another purpose or admissible evidence of habit. *Id.* at 3-4.

The Court agrees with Defendants that evidence of Mr. Sanford's treatment at prior facilities is broadly relevant and that the potential prejudice does not "substantially outweigh[]" the evidence's probative value. FRE 403. As evidenced by Defendants' expert's reliance on the medical reports from those facilities, such evidence is probative of Mr. Sanford's condition upon entering ACNH, and therefore, probative of the extent to which Mr. Sanford's death was the result of medical malpractice or the confluence of serious, pre-existing medical conditions. That the previous treatment involved "unrelated parties and occurred at different points in time" does not defeat relevance. *See, e.g., United States v. Ray*, 585 F. Supp. 3d 445, 459 (S.D.N.Y. 2022) ("Rule 401 imposes a relatively low bar of relevance") (internal quotation marks and citation omitted). Those instances of care are at least somewhat probative of the severity of Mr. Sanford's various ailments. Therefore, the Court finds evidence of Mr. Sanford's treatment at previous facilities is admissible.

However, the Court finds that evidence of Plaintiff's complaints regarding that treatment should be excluded because its probative value is substantially outweighed by its potential for

prejudice.  FRE 403.  At base, evidence of Plaintiff's prior complaints against previous facilities and employees has little relevance to the merits of Plaintiff's claims, and instead, would "unfairly suggest [Plaintiff] is a troublemaker who is not to be believed, without any substantial probative benefit."  *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 400 (E.D.N.Y. 2013); *see also Hampton v. Diageo North America, Inc.*, 3:04-cv-346 (PCD), 2008 WL 11377720, at *2 (D. Conn. Apr. 17, 2008) (finding prior complaints "not relevant to the material facts at issue in this case").  Indeed, "[p]ermitting the complaints to be admitted into evidence . . . poses a significant danger that the jury will evaluate the merits of [Plaintiff's] past claims, and this danger substantially outweighs the minimal probative value of the complaints."  *Smith v. NBC Universal*, 06 Civ. 5350(SAS), 2008 WL 483604, at *3 (S.D.N.Y. Feb. 22, 2008).  Therefore, evidence of Plaintiff's complaints about Good Samaritan and Evergreen are excluded.

The Court need not delve into whether the evidence of Plaintiff's prior complaints constitutes impermissible character evidence or evidence of other acts offered for a permissible purpose.  FRE 404(b)(1)-(2).  However, even if the evidence were not excluded under FRE 403, the Court would still exclude it as improper character evidence.  "The Second Circuit has explained that '[l]itigiousness is the sort of character trait with which Rule 404(b) is concerned.'"  *Dreni v. PrinterOn America Corp.*, 1:18-cv-12017-MKV, 2022 WL 2828153, at *2 (S.D.N.Y. July 20, 2022) (citing *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)).  In determining whether evidence of "other acts," including past complaints, may be admitted, the Court must determine whether "(1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; and (3) its probative value is substantially outweighed by its prejudicial effect[.]"  *U.S. v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citation omitted).  While arguably minimally probative of the validity of the Plaintiff's claims of mistreatment by Defendants, *see Outley*, 837 F.2d at 592,

5

Defendants have failed to point to "another purpose" for which the evidence of Plaintiff's complaints regarding previous facilities could possibly be used. As such, Defendants fail at step one. Instead of identifying a proper purpose, Defendants merely reiterate their conclusory arguments that the evidence "is significant for defendants' defense" and that "[i]t is important that the jury see the whole picture." Dkt. No. 162 at 4. Moreover, as noted above, the previous complaints have little relevance to Plaintiff's claims. Evidence of Mr. Sanford's treatment at the two prior facilities is more probative as to the issue of his condition when he entered ACNH, "but with a lesser risk of unfair prejudice." *Dreni*, 2022 WL 2828153, at *3 (citing *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)). Finally, as discussed above, the complaints risk substantial prejudice to Plaintiff. Thus, the Court finds the evidence of Plaintiff's previous complaints inadmissible.[1] *See, e.g., Hampton*, 2008 WL 11377720, at *2 (finding evidence of prior complaint "is also likely to prejudice the jury that he is a 'serial plaintiff' with a propensity to file [] suits contrary to Rule 404(b) of the Federal Rules of Evidence").[2]

### ii.    Mr. Sanford's Alleged Prior Sexually Inappropriate Comments

Next, Plaintiff argues that evidence of Mr. Sanford's alleged prior sexually inappropriate comments to nursing staff should be excluded because it is irrelevant and unduly prejudicial. Dkt. No. 149 at 7. Defendants argue that the evidence is relevant to their employees' ability to provide adequate care to Mr. Sanford, particularly on March 1, 2018, where the evidence indicates that Mr.

---

[1] The complaints raised by Defendants as supporting the admissibility of Officer Malinoski's testimony regarding the police investigation are inadmissible for the same reason. *See* Dkt. No. 162 at 14.

[2] The Court also finds that evidence of Plaintiff's previous complaints does not constitute admissible evidence of "habit" under FRE 406. *See, e.g., Lewis v. American Sugar Refining, Inc.*, 14-cv-02302 (CRK), 2018 WL 11409641, at *5 n.5 (S.D.N.Y. Mar. 26, 2018) ("Defendants may not, at trial, directly or indirectly argue that Plaintiff had a habit of submitting grievances or that Plaintiff has a litigious nature").

Sanford's unruly behavior prevented staff from properly assessing his vital signs.  Dkt. No. 162 at 6.  Defendants also argue that such evidence is relevant to the issue of whether punitive damages, which require a finding of heightened culpability, would be appropriate.  *Id.* at 7.

The Court agrees with Defendants as to evidence of Mr. Sanford's physical behavior which could possibly interfere with the provision of his care.  However, the Court finds evidence of Mr. Sanford's "sexually explicit language" used towards staff to be insufficiently probative of ACNH's ability to provide care and that its probative value is substantially outweighed by the risk of prejudice posed by admitting such comments.  As Defendants point out, Mr. Sanford's physical interference with his own care, including aggressive physical behavior towards staff, is probative as to whether Defendants were so "reckless" as to justify punitive damages.  *Koch v. Greenberg*, 14 F. Supp. 3d 247, 273 (S.D.N.Y. 2014) (describing the standard for punitive damages).  Undoubtedly, the evidence might "embarrass" Mr. Sanford and Plaintiff, but the jury will also be made aware of Mr. Sanford's medical conditions which led to the behavior in question, lowering any chance of substantial prejudice.  However, evidence of Mr. Sanford's purely verbal sexually inappropriate comments is only minimally probative, if probative at all, of Defendants' ability to render care and carries a substantial risk of prejudice to Plaintiff by unfairly suggesting any mistreatment towards him was deserved or by confusing the issues.  *See Jeanty v. Cerminaro*, 6:16-cv-00966 (BKS/TWD), 2021 WL 2778572, at *6 (N.D.N.Y. July 2, 2021) (excluding evidence with little to no probative value that Plaintiff argued would "put Plaintiff in a bad light before the jury").

### iii.    Conversations Between Lori LaRock and Mark LaRock, Sr.

Plaintiff next argues that "all evidence regarding private conversations between Mr. and Mrs. LaRock is privileged and inadmissible.  Dkt. No. 149 at 7 (citing *LaRock v. Albany Cnty. Nursing Home*, No. 19 Civ. 0604, 2022 WL 1043432, at *1 (N.D.N.Y. Apr. 7, 2022)).  Plaintiff also avers that "defense counsel should be precluded from asking questions about spousal communications that would force Plaintiff to invoke the privilege before the jury."  *Id.* at 8.  Defendants agree that, generally, the law of the case is that communications between Lori LaRock and her spouse are covered by spousal privilege, Dkt. No. 162 at 12 (citing Dkt. No. 81), but argues that this Court has also already determined that the specific February 27, 2018 conversation which Plaintiff voluntarily reported to the police is not protected by the privilege, *id*.

Defendants are correct.  *See* Dkt. No. 81 at 12.  Therefore, Defendants may introduce evidence of the February 27, 2018 conversations between Plaintiff and her spouse which she reported to the Town of Colonie Police Department unless Plaintiff can successfully object on non-privilege grounds at trial.  To the extent that Defendants seek to provide evidence of additional conversations for which the privilege was waived, Defendants should request to do so outside of the presence of the jury.

### iv.    Colonie Police Department Investigation

Next, Plaintiff argues that "[e]vidence concerning the opinions of the police investigator or the results of the Police Department's investigation into Mr. Sanford's death, including its decision not to bring criminal charges against Defendants, should be excluded as irrelevant and prejudicial."  Dkt. No. 149 at 8.  Plaintiff also argues that such evidence might confuse the issues for the jury.  *Id.* at 8-9.  In response, Defendants argue that such evidence "is necessary for defendants' defense" and is probative, seemingly because Plaintiff's Section 1983 claim "can be

established by showing the lawless conduct of state actors." Dkt. No. 162 at 13 (citing *Banks v. Yokemick*, 177 F. Supp. 2d 239, 249 (S.D.N.Y. 2001)). Defendants also appear to argue that the evidence is insufficiently prejudicial to warrant exclusion under FRE 403. *Id.* (citing *Chalco v. Belair*, 3:15-CV-340 (VLB), 2019 WL 456162 *2 (D. Conn. Feb. 5, 2019)).

The Court finds that evidence of the results of the police investigation and the opinions of the investigator pose a substantial risk of confusing the issues for the jury which outweigh the minimal probative value offered by such evidence. FRE 403. Here, evidence of the results and opinions reached in the criminal investigation are only minimally probative, if at all. Defendants argue such evidence is relevant to defending against Plaintiff's *Monell* claim because such claims *can* be based on the municipality's alleged unlawful conduct. But Plaintiff's *Monell* claim is based on an alleged policy, custom, or practice of understaffing ACNH, prioritizing profit over care when making decisions to send residents to the hospital, and widespread non-compliance with Code E and SBAR policies. Dkt. No. 114 at 28-29. Plaintiff does not allege that Defendants repeatedly broke criminal laws, and that those actions constitute the policy or custom of the municipality. Therefore, Defendants' sole offered point of relevance is insubstantial at best.

Moreover, that a criminal investigation found no criminal wrongdoing is not relevant to whether Defendants should be liable for policies or customs which led to violations of Plaintiff's rights under FNHRA because the criminal investigation involves an entirely different standard of evaluating Defendants' conduct.

Finally, the risk of prejudice and/or confusing the jury is great. Evidence of the conclusions in related criminal investigations in civil suits "impermissibly tells the jury what result to reach." *Chalco*, 2019 WL 456162, at *4 (excluding evidence of criminal investigation conclusions because it was irrelevant to plaintiff's claim); *see also Light v. City of New Have Bd. Of Educ.*, 3:22-cv-

425 (JBA), 2024 WL 3593817, at *2 (D. Conn. July 21, 2024) ("courts commonly exclude opinion evidence that tells a jury what result to reach" including evidence of "the findings of investigative reports"). Therefore, the Court excludes evidence of the investigator's opinions, as well as the investigation's conclusions and results.

However, to the extent Plaintiff argues that all evidence related to the criminal investigation should be barred, the Court reserves. As of now, Defendants are not barred from introducing evidence related to the criminal investigation, including the portions of Exhibit B attached to Defendants' response to Plaintiff's motion *in limine* ("Investigator's Case Notes"), which do not include the investigation's conclusions, nor is Officer Malinoski barred from testifying entirely. The Court notes, however, that the substance of the Investigator's Case Notes repeats evidence from other sources and the Court will entertain challenges to the introduction of Officer Malinoski's testimony and the Investigator's Case Notes on the ground that they are cumulative. Indeed, the repetitive nature of the evidence in the Investigator's Case Notes, and by extension Officer Malinoski's testimony, might lead this Court to conclude that all evidence related to the criminal investigation has little probative value, and that the potential prejudice which results from referencing, but not detailing the results of, a related criminal investigation might substantially outweigh the evidence's probative value. *See Light*, 2024 WL 3593817, at *2 (finding outside the impermissible conclusions, the remainder of an investigative report "summarize[d] the results of document review and witness interviews" which provided "little additional probative value"). However, because the parties have not addressed this issue directly, the Court reserves. Prior to Officer Malinoski taking the stand, the Court requires a proffer from Defendants on the issue of Officer Malinoski's testimony and the proposed use of the Investigator's Case Notes at trial. Defendants must explain what topics, if any, Officer Malinoski may address in accordance with

this order.

### v.    Dr. Steven Salzman's Expert Testimony

Turning to Defendants' experts, Plaintiff next seeks to prohibit Dr. Steven Salzman from 1) offering legal conclusions, 2) testifying as to ACNH's staff training or the Department of Health's investigation, and 3) offering unreliable opinions.  Dkt. No. 149 at 9-14.  In response, Defendants 1) agree that experts may not offer legal conclusions but 2) argue that Dr. Salzman's experience as a physician qualifies him to testify as to the contested topics and 3) assert that Dr. Salzman's testimony is thoroughly reliable because it is based on a wider set of considerations and data than Plaintiff's experts.  Dkt. No. 162 at 15-17.

First, the Court finds that the Plaintiff's cited opinions in Dr. Salzman's expert report illustrate Dr. Salzman offering a legal conclusion, and thus, rules that they are barred from being elicited during his testimony.  Dkt. No. 149 at 10.  In the expert report, Dr. Salzman asserts that "the staff at the Albany County Nursing Home was not deliberately indifferent to the needs of Mr. Sanford," and that he has "seen no evidence to demonstrate there was a persistent and widespread pattern and practice of violating Mr. Sanford or any other residents' rights."  *Id.*  Such statements "track[] the exact language" of the legal issues at issue in this case, and thus, they "couch his opinions in terms that derive[] their definitions from judicial interpretations."  *U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (citation omitted).  Dr. Salzman's statements in the expert report also rely on "his assessment of the testimony and credibility of other witnesses" and are "not based on personal knowledge."  *Id.*  Therefore, they constitute legal conclusions, rather than factual conclusions, which must be excluded.  To the extent the Mr. Salzman offers further potential legal conclusions in his testimony, the Court reserves judgment.

Second, in relation to Plaintiff's argument that Dr. Salzman may not testify on ACNH

policies and the Department of Health ("DOH") investigation, the Court reserves on the specific

questions of whether Dr. Salzman may testify broadly on staff training and the use of SBAR

strategies.  It is possible that Dr. Salzman has "practical experience" and "specialized knowledge"

qualifying him to give opinion testimony under FRE 702 on staff training and the use of SBAR

strategies.  "If [an] expert has educational and experiential qualifications in a general field closely

related to the subject matter in question, the court will not exclude the testimony solely on the

ground that the witness lacks expertise in the specialized areas that are directly pertinent."  *In re

Zyprexa Products Liability Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citing *Stagl v. Delta

Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir.1997)).  Here, Dr. Salzman is a pulmonary and critical care

physician, a "general field" which is closely related to the subject of running an effective medical

facility, including staff training and the use of SBAR strategies.  Indeed, this Court is hesitant to

impose "an overly narrow test of [Dr. Salzman's] qualifications," particularly where his opinion

as a physician with a sub-specialty in critical care might at least provide some assistance to the

jury in determining the factual issues.  *Crown Cork & Seal Co., Inc. Master Retirement Trust v.

Credit Suisse First Boston Corp.*, 12-cv-05803-JLG, 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12,

2013).   Properly elicited, it is possible that Dr. Salzman's opinions are not "speculative or

conjectural," *contra Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206,

213-14 (2d Cir. 2009), but instead, are based on Dr. Salzman's experiences.  So long as Dr.

Salzman "explain[s] how [his] experience leads to the conclusion[s] [he] reache[s], why that

experience is a sufficient basis for the opinion, and how that experience is reliably applied to the

facts," the Court will not exclude his testimony on staff training or the use of SBAR strategies due

to a lack of expertise.  *523 IP LLC v. CureMD.com*, 48 F.Supp.3d 600, 643 (S.D.N.Y. 2014)

(citation omitted).  The Court will assess whether such opinions are sufficiently grounded in Dr.

Salzman's experience as they are solicited at trial.[3]

However, as they are currently stated in the report, the opinions highlighted by Plaintiff in which Dr. Salzman opines on the appropriateness of the ACNH's policies and the thoroughness or reliability of the DOH investigation are barred. Dkt. No. 149 at 11. His opinion that the "policies in place at the ACNH were appropriate" appears to rely entirely on the fact that "the DOH did not request that any policies be altered, modified or changed in any way." *Id.* His opinion that "[t]he DOH's investigation of ACNH involved a visit in which staff members had no time to review the chart so reported events were from their recollection" and that "the notes by the nurse investigator . . . were not accurate reflections of their statements" appears not to draw on his expertise, but instead, finds him offering his own assessment of the record unmoored from any expertise. *Id.* Such opinions are mere regurgitations of "facts that the jury is 'fully capable of understanding'" and "offer[] nothing more than what 'lawyers representing [defendants] could provide during their

---

[3] The Court notes Plaintiff's concern as to the reliability of Dr. Salzman's testimony, specifically as to the training of ACNH staff, but finds that it may not exclude such testimony on those grounds at this juncture. "The factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 150 (1999). Therefore, that some of Dr. Salzman's opinions might not be based on "a theory or technique" which "can be (and has been) tested" does not render them unreliable. Dkt. No. 149 at 12 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993)). Instead, Rule 702 requires that this Court "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (citing *Kumho Tire*, 526 U.S. at 152). Dr. Salzman's potential testimony on the appropriateness of staff training and whether "ACNH staff appropriately understood . . . [Mr. Sanford] might need transfer to an emergency room," at least as expressed in his expert report, does not appear to be based on his personal experiences as a physician, but rather, an unreliable assessment of the record. Dr. Salzman fails to connect these conclusions in any way to his personal experience as a physician, and instead, merely relies on the testimony offered by fact witnesses. Dkt. 149 at 13 (showing the opinions rely entirely on citations to declarations). In accordance with this Order, the Court will assess whether these opinions, if Defendants seek to solicit them at trial, are sufficiently grounded in Dr. Salzman's experience.

closing arguments'" and thus must be excluded.  *In re Lyman Good Dietary Supplements Litig.*, 17 Civ. 8047, 2019 WL 5682880, at *3 (S.D.N.Y. Oct. 31, 2019) (citation omitted).  Therefore, Dr. Salzman must provide proper explanation as to how his professional and expert experiences lead to the various conclusions he offers at trial.  Otherwise, his opinions will be barred.

### vi.    Beth Anne Maas's Expert Testimony

Finally, Plaintiff argues that Defendants' Nursing Expert Beth Anne Maas should be precluded from testifying on medical diagnosis or causation, DOH investigatory policies, procedures, and findings, and legal conclusions.  Dkt. No. 149 at 14-16.

Defendants do not dispute that the parties' nursing experts may not opine on causation or legal conclusions, and instead, argues that Plaintiff has misconstrued portions of Ms. Maas's expert report as offering opinions, when in reality, they are merely regurgitations of other documents. Dkt. No. 162 at 19.  Defendants also point out that Plaintiff's concern with Ms. Maas's testimony regarding DOH investigatory policies, procedures, and findings is off-base because the cited portions of Ms. Maas's report "reference the record before her."  *Id.*  Regardless, Defendants appear to argue that Ms. Maas may in fact testify as to DOH investigatory policies, procedures, and findings, and that questions regarding her qualifications go to the weight of her testimony rather than its admissibility.  *Id.* at 20.

The Court agrees with the parties that Ms. Maas may not offer opinions on causation or legal conclusions but reserves on whether Ms. Maas's testimony on the DOH investigation is permissible as reliant on her professional experiences.

As to the portions of Ms. Maas's report cited by Plaintiff as evidencing legal conclusions, the Court agrees with Plaintiff.  Dkt. 149 at 16.  Again, the cited portions of the report explicitly state ultimate legal conclusions using language which "couch[es] her opinions in terms that

derive[] their definitions from judicial interpretations." *Duncan*, 42 F.3d at 101. Therefore, Ms. Maas is precluded from testifying as to whether the ACNH was "deliberately indifferent" to Mr. Sanford, whether a "pattern and practice of violating Mr. Sanford or any other residents' rights" exists, and whether staffing levels "violate[d] New York State regulations." Dkt. No. 149 at 16.

As to causation, the Court agrees that medical causation is outside of a nurse's expertise, and therefore, finds Ms. Maas may not testify as to the causes of Mr. Sanford's death. Moreover, Ms. Maas may not simply restate findings which can be independently introduced by Defendants through other evidence. Therefore, to the extent Ms. Maas's testimony merely summarizes evidence found elsewhere, it is barred by the Court.

As to the testimony regarding the DOH investigation, the Court finds that in the portions of the report cited by Plaintiff, Ms. Maas is not merely referencing the record in front of her, as Defendants assert. Dkt. No. 149 at 15. Instead, Ms. Maas appears to be expressing independent opinions based on the record. *Id.* However, as provided in the report, such opinions heavily regurgitate "facts that the jury is 'fully capable of understanding'" and do not explicitly state any other basis for the opinions. For this reason, they must be excluded unless Ms. Maas can adequately tie her conclusions to her personal or professional experiences. *In re Lyman Good Dietary Supplements Litig.*, 2019 WL 5682880, at *3 (citation omitted).

In conclusion, to the extent not explicitly addressed above, the Court reserves judgment on the admissibility of Ms. Maas's various opinions until they are presented at trial but warns that such opinions may not concern medical causation or offer legal conclusions. Additionally, to the extent Ms. Maas's testimony involves repeating facts established by other witnesses for purposes of summary or explanation, the Court will hear objections as to whether that testimony is needlessly cumulative and should be excluded per FRE 403. Testimony merely restating the facts

which can be presented independently through other evidence will be barred and expert witnesses may not be offered as mere summarizers.

**B.      Defendants' Motion *in Limine***

Defendants seek to exclude and/or limit the use of  (i) any and all documents created by defendants for quality assurance purposes, (ii) any and all DOH investigation records and the Statement of Deficiencies and Plan of Correction, (iii) any and all references to statements made by Dr. Dragomir in connection with the Department of Health investigation of the subject incident, (iv) the personnel files of any and all defendants, including prior and/or subsequent evidence of remedial measures and/or training, including any and all NOPA notices issued to the individual defendants, (v) testimony of Michelle Fontaine, (vi) pattern and practice evidence, (vii) any and all references to Larry Slatky's income, salary, and/or political contributions, including any and all newspaper articles naming or discussing any defendant and/or the subject incident, (viii) any and all references to other litigation brought by or against defendants, and (ix) Plaintiff's expert Georgia Persky's testimony regarding causation.  The Court addresses each argument in turn.

**i.   Quality Assurance Documents and DOH Investigation Records**

First, Defendants attempt to exclude "any and all documents created by defendants for quality assurance purposes and the New York State Department of Health investigation materials, [S]tatement of [D]eficiencies and [P]lan of [C]orrection[.]" Dkt. No. 145-1 at 3-4.  Regarding the ACNH evidence related to quality assurance (the "alleged QA materials"), Defendants argue that the evidence is protected by a privilege and that "[b]ecause these documents were generated by defendant Albany County Nursing Home's quality assurance committee for quality assurance purposes, they are not subject to disclosure under FNHRA 42 U.S.C.A. § 1396r(b)(1)(B)[.]" ("Section 1396r(b)(1)(B)").  *Id.* at 4.  As to the DOH investigation materials and the Statement of

Deficiencies and Plan of Correction (the "DOH materials"), Defendants argue such materials are protected by the same privilege "[b]ecause the [alleged QA materials] were relied upon by the Department of Health in its investigation[.]" *Id.* at 6. Defendants also argue that the DOH Survey Notes and the Statement of Deficiencies and Plan of Correction should be precluded on the additional basis that they contain hearsay. *Id.* at 7-8. Finally, in the alternative, Defendants argue that they are entitled to redaction from the DOH Statement of Deficiencies and Plan of Correction of any finding of deficiencies and legal conclusions. *Id.* at 8.

In response, Plaintiff makes five arguments: "(1) The [alleged QA and DOH materials] subject to this motion [are] relevant; (2) none of this evidence is "privileged" under or otherwise rendered inadmissible by FNHRA Section 1396r(b)(1)(B) or any analogous state law; (3) even if Section 1396r(b)(1)(B) did create a "privilege" applicable here, documents from the DOH's investigation into Mr. Sanford's death are not subject to the statute's restrictions; (4) the DOH Statement of Deficiencies and Plan of Correction should not be redacted; and (5) notes from DOH's investigation are not themselves—and do not contain—inadmissible hearsay." Dkt. No. 164 at 1-2. The Court addresses these arguments in turn.

First, the Court agrees with Plaintiff that the disputed documents are relevant. Indeed, Defendants do not appear to dispute as much. The alleged QA materials are probative as to the ACNH's longstanding practices, customs, and policies, as well as the specific treatment of Mr. Sanford on March 1, 2018. *Id.* at 3. The DOH materials, which in part set out Defendants' violations of health and safety regulations related to the care of Mr. Sanford, are probative of whether Defendants violated the applicable standard of care. Moreover, this Court has already noted the DOH materials' relevance to whether Plaintiff can maintain a *Monell* claim against ACNH. Dkt. No. 133 at n.12. Therefore, the Court finds the materials are, at base, admissible so

long as no other bar to admissibility is applicable.

Second, Defendants' argument that a privilege precludes the admissibility of the alleged QA materials and the DOH materials is misplaced. Defendants have waived any protections afforded by the statutes in question by producing and disclosing, years ago, the very documents they now seek to exclude from trial. *See generally* FRE 502. Regardless, as Plaintiff points out, Section 1396r(b)(1)(B) does not create an evidentiary privilege. In relevant part, Section 1396r(b)(1)(B) reads, "A State or Secretary may not require disclosure of the records of [a Quality Assurance Committee] except insofar as such disclosure is related to the compliance of such committee and the requirements of this subparagraph." *See also* Dkt. No. 145-1 at 4. It is undisputed by Plaintiff that records created by a Quality Assurance Committee are not subject to mandatory disclosure during discovery. Dkt. No. 164 at 5 (citing *In re Subpoena Duces Tecum to Jane Doe, Esq.*, 99 N.Y.2d 434, 438 (2003)). However, the statute, by its plain terms, does not govern the admissibility of evidence which has already been disclosed in discovery. Indeed, the Court's reading of the statute is bolstered by the fact that Congress has, in other contexts, made explicit its desire that a privilege extend not just to discovery but to admissibility at trial. *See, e.g.,* 25 U.S.C.A § 1675(c)(1) (prohibiting quality assurance records created through federal "Indian health programs" or "urban Indian organizations" from being "admitted into evidence in any judicial . . . proceeding"); 10 U.S.C.A § 1102(b) (prohibiting admissibility of quality assurance records created "by or for the Department of Defense"). No such explicit bar on admissibility at trial exists here, nor have Defendants provided a single case in which a court has excluded evidence from trial on the basis of the asserted privilege from disclosure. *See* Dkt. No. 164 at 7 n.4.[4] "Where

---

[4] The same is true of the analogous state laws marshaled by Defendants in their attempt to exclude the alleged QA and DOH materials. *See* N.Y. Pub. Health Law § 2805m(2) (restricting disclosure of QAC records "under article six of the public officers law [i.e, FOIL] or article thirty-one of the

[a] statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Hasan*, 586 F.3d 161, 167 (2d Cir. 2009). As such, the Court finds that the Section 1396r(b)(1)(B) privilege is inapplicable to the current dispute, and because Defendants do not dispute their admissibility on other grounds, the alleged QA materials are admissible.[5]

Third, the DOH materials are not subject to privilege for the same reason. Defendants have failed to identify any applicable privilege which could bar use of the DOH materials at trial.[6]

Fourth, the Court finds the Statement of Deficiencies and Plan of Correction must be redacted to exclude their legal conclusions as to whether Defendants violated the regulations at issue. It is unclear whether Defendants seek redactions pursuant to the quality assurance privilege or under a more general objection of prejudice. Dkt. No. 145-1 at 8. The former argument, as explained above, holds no weight. The latter is meritorious. As previously discussed in this Court's decision to exclude the conclusions of the criminal investigation, evidence of

---

civil practice law and rules"); *see also Leardi v. Lutheran Med. Ctr.*, 67 A.D.3d 651, 651 (2d Dep't 2009) (finding N.Y. Education Law § 6527(3) merely "shields from disclosure" certain documents).

[5] To the extent that Defendants' argument relies on the application of exclusively state law privileges, such law does not govern in non-diversity cases. *Complex Systems, Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) ("federal law governs privilege issues in a federal question case with pendent state law claims").

[6] Even if such a privilege against use at trial after disclosure existed and governed this case, the privilege would have to be extended to cover not just materials created internally for quality assurance purposes, but also materials created by third parties that might have relied on the internal quality assurance documents to cover the DOH materials. Defendants have identified a case which might suggest such an extension is possible in the discovery context. *Callahan v. County of Schenectady*, 08-CV-760 (GLS/DRH), 2010 WL 1006610, at *2 (N.D.N.Y. Mar. 15, 2010). But that case applies the analogous state laws, which are not directly applicable here. Supra fn.6. Instead, to the extent it creates a federal quality assurance privilege, Section 1396r(b)(1)(B) has been interpreted more strictly to exclude documents "generated outside" a quality assurance committee. *Brown v. Sun Healthcare Group, Inc.*, 3:06-CV-240, 2008 WL 1751675, at *4 (E.D. Tenn. Apr. 14, 2008). Regardless, the Court finds no reason to bar otherwise admissible evidence after Defendants produced the allegedly privileged documents in discovery.

investigations into the conduct at the heart of a case can be prejudicial because they may tell the jury what result to reach. *Chalco*, 2019 WL 456162, at *4 (excluding evidence of criminal investigation conclusions because it was irrelevant to plaintiff's claim and "impermissibly tells the jury what result to reach"). However, unlike the criminal investigation, the DOH investigation's findings in the Statement of Deficiencies and Plan of Correction that Defendants violated health and safety regulations in relation to the care of Mr. Sanford is probative of the applicable standard of care for Plaintiff's state law claims. *See, e.g., Buchanan for Buchanan v. Hesse*, 521 F. Supp.3d 348, 356 (S.D.N.Y. 2021) (finding "statutes or administrative regulations may establish a duty and standard of care"). Thus, the weighing of probative value versus the potential for prejudice is a closer call. Courts in this circuit have tended to exclude the legal conclusions offered by administrative agencies, and more specifically DOH investigations, on grounds that they impermissibly tell the jury what result to reach. *See, e.g., Quinn v. U.S.*, 946 F. Supp. 2d 267, 282 (N.D.N.Y. 2013); *Park West Radiology v. CareCore Nat. LLC*, 675 F.Supp.2d 314, 325 (S.D.N.Y.2009); *Miranda-Ortiz v. Deming*, 94 CIV 476 CSH, 1998 WL 765161, at *1 (S.D.N.Y. Oct. 29, 1998). Moreover, there is little loss in probative value by redacting the legal conclusions. The jury will have all of the DOH investigation's factual findings before it, so allowing the Statement of Deficiencies and Plan of Correction's legal conclusions to go unredacted would provide no additional value but to "suggest to the jury that it should reach the same conclusion" on whether the regulations at issue were violated. *See Paolitto v. John Brown E.&C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) (citing *Hall v. Western Production Co.*, 988 F.2d 1050, 1058 (10th Cir. 1993)). Accordingly, the Court finds that the legal conclusions of the Statement of Deficiencies and Plan of Correction must be redacted, but that the document's factual findings are admissible so long as they do not otherwise violate the rules of evidence. *See Paolitto*, 151 F.3d at 65 (leaving

the admissibility of administrative conclusions under FRE 403 to the discretion of the trial court); *see also Maldonado v. Cotter*, 256 A.D.2d 1073, 1075 (4th Dep't 1998) (redacting legal conclusions of DOH report); *Cramer v. Benedictine Hosp.*, 301 A.D.2d 924, 927 (3d Dep't 2003) (finding DOH report was properly redacted because "opinions and conclusions" are inadmissible); N.Y. Pub. Health Law § 10(2) (establishing the *factual findings* of DOH reports are admissible as evidence of the facts stated therein).

Fifth, the DOH Survey Notes and Statement of Deficiencies and Plan of Correction need not be excluded in their entirety on the basis of hearsay. At base, the documents themselves are admissible both under the business records and the public records exceptions. FRE 803(6), (8). Plaintiff has attested to the fact that an appropriate witness will testify at trial as to the fact that the records were compiled as a part of DOH's investigation and were "made at or near the time" of the events in question and that the records were "kept in the course of a regularly conducted business activity." Dkt. No. 164 at 10. Moreover, the public records exception applies to "factual findings from a legally authorized investigation," and thus, permits the use of the DOH Survey Notes and the findings in the Statement of Deficiencies and Plan of Correction. FRE 803(8)(A). Defendants appear to concede that the records themselves are at least permitted under the business records exception. Dkt. No. 145-1 at 7; *see also Quinn*, 946 F. Supp. 2d at 282 ("DOH report likely falls within the exception to the rule against hearsay located in Fed. R. Evid. 803(8), which applies to public records").

However, Defendants rightfully point out that even if the records themselves are admissible under a hearsay exception, hearsay statements made by third parties which are recorded in those records must be excluded. Dkt. No. 145-1 at 8; *see United States Underwriters Ins. Co. v. ITG Development Group, LLC*, 294 F. Supp. 3d 18, 29 (E.D.N.Y. 2018) ("[S]tatements of witnesses or

complaints within [the] reports . . . are hearsay unless they fit into an independent exception to the hearsay rule") (citation omitted).  However, an independent hearsay exception does apply to the statements made within the DOH Survey Notes and Statement of Deficiencies and Plan of Correction.  The evidence at issue includes statements made by Defendants Gossman and Lyga as well as ACNH employees Maureen Tomisman and Dr. Vanessa Demming concerning Mr. Sanford's care and death.  Such statements, made by the Defendants themselves or the Defendants' employees or agents within the scope of the employment relationship, constitute party-opponent admissions which are not barred by the hearsay rule.  *See* FRE 801(d)(2).

In total, no evidence is excluded pursuant to the privileges afforded to quality assurance records during the course of discovery.  Nor does the hearsay rule bar the use of statements made within the DOH materials.  However, the legal conclusions in the Statement of Deficiencies and Plan of Correction must be redacted pursuant to FRE 403.

### ii.  Dr. Dragomir's Statements related to DOH Investigation

Next, Defendants argue that Plaintiff should be precluded from introducing or referencing statements made by Dr. Dragomir in response to the DOH investigation.  Dkt. No. 145-1 at 9.  In particular, Defendants wish to exclude Dr. Dragomir's statements to the DOH investigator in which he conveyed that he "wanted Mr. Sanford to go to the hospital and that he told the nurse to call the family to find out which hospital they wanted him sent to."  *Id.* at 10.  Defendants argue FRE 613(b), which bars "extrinsic evidence of a prior inconsistent statement by a witness" unless "the witness is afforded an opportunity to explain or deny the same" operates to preclude Dr. Dragomir's statements to the DOH investigator.  *Id.* at 11 (citing *U.S. v. Ghailal*, 767 F. Supp. 2d 114, 117 n.4 (S.D.N.Y. 2011).  Defendants also argue the statements are hearsay.  *Id.*

In response, Plaintiff argues that the statements are not subject to FRE 613(b) because Dr.

Dragomir is not a witness subject to impeachment.  Dkt. No. 164 at 13.  Plaintiff also argues that the DOH investigator's notes themselves are subject to the business records and public records exceptions to the hearsay rule, and that Dr. Dragomir's statements within those records should be admitted pursuant to the residual hearsay exception.  *Id.* at 11-13.

Dr. Dragomir's statements are not precluded by FRE 613(b).  FRE 613(b) applies to preclude "extrinsic evidence of a witness's prior inconsistent statement" unless the witness has the opportunity to explain or deny the statement.  Defendants appear to construe Dr. Dragomir's statements as "extrinsic evidence" capable of impeaching Defendant Gossman's testimony.  *See* Dkt. 145-1 at 10.  But FRE 613(b) does not preclude any extrinsic evidence capable of impeaching a witness's testimony.  Instead, it operates to exclude extrinsic evidence of an actual prior inconsistent statement made by the witness herself.  Here, the statements are not evidence of an inconsistent statement made by Defendant Gossman.  Nor is the deceased Dr. Dragomir a witness who has made a statement that is being contradicted by a prior inconsistent statement.  Therefore, Rule 613(b) does not preclude evidence of Dr. Dragomir's statements.

The Court also finds Dr. Dragomir's statements to be admissible pursuant to the residual hearsay exception.  Statements are admissible pursuant to FRE 807 if: "(1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  The law in this Circuit requires that hearsay admitted pursuant to Rule 807 meets five requirements: "trustworthiness, materiality, probative importance, the interests of justice and notice."  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).

The Court finds that the four latter requirements (materiality, probative importance, the

interests of justice, and notice) have all been satisfied. Dr. Dragomir's statements regarding his instructions to Defendant Gossman are certainly material to whether Defendant Gossman's ultimate treatment of Mr. Sanford violated an applicable standard of care. Moreover, the statements within the DOH investigator's reports are the only available evidence of Dr. Dragomir's recollection of his instructions to Defendant Gossman given he is deceased and unable to testify. The same considerations suggest the evidence would serve the interests of justice: without the evidence, the only testimony as to the conversation between Dr. Dragomir and Defendant Gossman will come from Defendant Gossman herself, whose testimony might be motivated by self-interest. Finally, Plaintiff has provided proper notice of their intent to use the statements.

As to the remaining prong, trustworthiness, "it is the burden of the party opposing admission to show a lack of trustworthiness." *Hardy v. Adams*, 654 F. Supp. 3d 159, 172-73 (N.D.N.Y. 2023) (citation omitted). "[P]roperly considered factors in an analysis of reliability of hearsay statements contained in reports of investigative interviews include: (1) the amount of time that elapsed between the event and the statements; (2) the degree of specificity of the statements; and (3) whether they were intended in good faith to help the officer or agent interviewing the witness . . . ." *U.S. v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009). The Court also considers additional indicia of trustworthiness. Several factors indicate that Dr. Dragomir's statements might not be trustworthy. Six weeks passed between Mr. Sanford's death and Dr. Dragomir's statements to the DOH investigator. Moreover, the DOH investigator's deposition testimony reveals that Dr. Dragomir likely made the statements without referencing notes. Dkt. No. 145-1 at 10 (citing Dkt. No. 103, Exhibit EE #35 at 179-80). The DOH investigator also noted that Dr. Dragomir incorrectly recalled Mr. Sanford's temperature. *Id.* (citing Dkt. No. 103, Exhibit EE #35 at 178). Finally, Dr. Dragomir might have been incentivized to shift blame to Defendant Gossman

in an effort to shirk responsibility and accountability through the DOH investigation.  However, other factors weigh in favor of the statements' trustworthiness.  New York State rules governing the conduct of professionals who are licensed by the New York State Education Department, including medical doctors, prohibit "willfully making . . . a false report."  8 NYCRR § 29.1(6).  Thus, Dr. Dragomir also faced a countervailing incentive to be truthful.  Additionally, the statement was contemporaneously recorded by the DOH investigator.  The statements recorded by the DOH investigator also have a trustworthy degree of specificity in that they address whether to reach out to Mr. Sanford's family regarding choice of hospital.  Finally, it is indisputable that Dr. Dragomir gave a firsthand account of the instructions he gave to Defendant Gossman on March 1, 2018 regarding Mr. Sanford's care.  After considering the relevant indicia of truthfulness, the Court determines that Dr. Dragomir's statements in response to the DOH investigation are admissible.  Defendants will have ample opportunity to test and undermine such statements through cross-examination into the various issues of trustworthiness raised in their motion.

### iii.   Personnel Files

Next, Defendants argue that Plaintiff should be "precluded from introducing Defendants' personnel records" and "any and all [Notice of Personnel Action ("NOPA")] notices issued to the individual Defendants" based on the law precluding evidence of subsequent remedial measures.  Dkt. No. 145-1 at 12.  Defendants also argue that "past evidence of professional misconduct 'has no relevance at all to this action for medical malpractice.'"  *Id.* at 13 (citing *Gotlin ex rel. County of Richmond v. Lederman*, 04 CV 3736(ILG), 2010 WL 1779984, at *8 (E.D.N.Y. 2010)).  In response, Plaintiff argues that the personnel files and NOPA notices are not subsequent remedial measures and that the same documents are plainly relevant to Plaintiff's surviving *Monell* claim.

The Court finds that Defendants' arguments are mostly baseless and that the disputed

personnel documents and NOPAs may be admitted with certain redactions.[7]  First, the disputed documents are not subsequent remedial measures, but instead "post-incident investigations" which are admissible.  *M.T. v. City of New York*, 325 F. Supp. 3d 487, 498 (S.D.N.Y. 2018) ("the City is incorrect that a post-event investigation is a subsequent remedial measure precluded by the Federal Rules of Evidence"); *see also Auclair v. Corning Inc.*, 1:21-CV-633 (MAD/DJS), 2024 WL 1345498, at *14 (N.D.N.Y. Mar. 28, 2024) ("[p]ost-event tests or reports are generally outside the scope of Rule 407, and thus admissible, on the basis that they are conducted or prepared for the purpose of investigating the cause of the accident, and can rarely be characterized as 'measures' which, if conducted previously, would have reduced the likelihood of the accident") (citing *M.T.*, 325 F. Supp. 3d at 498).

The personnel records and NOPAs are also relevant and admissible pursuant to FRE 401 and 403.  That the personnel files and NOPAs might pertain to the treatment of other patients does not defeat their relevance to this case because Plaintiff alleges a *Monell* claim based on the policies, practices, and customs of the ACNH.  Unlike in *Dooley v. Columbia Presbyterian Medical Center*, evidence of previous incidents involving different residents would not be offered "solely because the two events are substantively similar" but instead would be offered to prove Plaintiff's claim that ACNH had a policy or custom which led to the mistreatment of patients.  6 Civ. 5644 (JCF), 2009 WL 2381331, at *2 (S.D.N.Y. 2009).  Evidence of the Defendants' prior incidents "may be probative of whether it was foreseeable to the municipality that the [Defendant] would engage in misconduct yet again" for purposes of a *Monell* claim.  *Outlaw v. City of Hartford*, 884 F.3d 351,

---

[7] As Plaintiff concedes, the portions of the NOPA notices discussing the individual Defendants' discipline do qualify as a subsequent remedial measures, and therefore, must be excluded.  *See* Dkt. No. 164 at 19 n.9.  Mention of disciplinary actions related to conduct involving residents other than Mr. Sanford must also be redacted from all personnel files.  However, as explained above, the rest of the files are admissible.

380 (2d Cir. 2018).  It is also relevant to establishing the existence of a policy for *Monell* purposes.

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (explaining that, for *Monell*

purposes, the "inference that a policy existed may [] be drawn from circumstantial proof" such as

"evidence that the municipality had notice of but repeatedly failed to make any meaningful

investigation into [the] charges").  While such evidence does pose at least some risk of prejudice,

that prejudice is greatly outweighed by the probative value of such incidents with respect to

Plaintiff's *Monell* claim.  Moreover, any prejudice may be minimized by an instruction to the jury

providing that such evidence should only be considered for purposes of determining Plaintiff's

*Monell* claim and should not be considered relevant to whether the individual Defendants engaged

in medical malpractice.  *See e.g.*, *Grant v. Lockett*, No. 19-1558, 2021 WL 5816245, at *8, n.2 (2d

Cir. Dec. 8, 2021) (finding no basis to disturb jury verdict as to admission of officer complaints

and disciplinary records because the district court provided jury with limiting instruction that the

evidence was "related solely to Plaintiffs' municipal liability claim").

In conclusion, the NOPAs and personnel files of the individual Defendants are admissible

except to the extent they contain details of the disciplinary actions affirmatively taken against the

Defendants.  Evidence of prior incidents involving other residents within those files is relevant to

Plaintiff's *Monell* claims and is admissible for purposes of establishing municipal liability, but not

for purposes of establishing propensity to engage in medical malpractice.

### iv.  Testimony of Michelle Fontaine

Defendants next seek to preclude the testimony of Michelle Fontaine on the basis that the

testimony is an attempt to introduce evidence of "other acts" of Defendants for purposes of

establishing propensity.  Dkt. No. 145-1 at 16.  Plaintiff argues that Ms. Fontaine's testimony is

instead offered to help prove her *Monell* claim by establishing that ACNH and Defendant Slatky

were aware of federally deficient treatment as early as 2016.  Dkt. No. 164 at 20.

The Court finds that though Ms. Fontaine's testimony is relevant to Plaintiff's *Monell* claim, the testimony's probative value is substantially outweighed by the risk of prejudice.  FRE 403.  Ms. Fontaine's testimony provides another example of potential mistreatment and Mr. Slatky's awareness, but the existence of a *Monell* claim cannot provide Plaintiff with the unchecked ability to introduce evidence of the ACNH's alleged policies and customs or notice of the lack of adequate policies.  *See Outlaw*, 884 F.3d at 380 ("To be sure, the right to probative evidence in *Monell* and other actions is not absolute") (internal quotation omitted).  Ms. Fontaine's testimony is based on her subjective experience with no checks on her truthfulness other than cross-examination.  Additionally, other admissible evidence is probative of Defendant Slatky's awareness of a possible custom or pattern of mistreatment which can be used to establish deliberate indifference.  Dkt. No. 164 at 16-17 (detailing the NOPAs' mentions of Defendant Slatky's awareness dating back to 2015).  Finally, the NOPAs contain a statement by Defendant Slatky that he received "so many complaints from families, family council and DOH about how staff [at ACNH] [were] acting."  *Id.* at 17 (citing PX-46).  Ms. Fontaine's complaints regarding her mother's treatment never amounted to anything more than a complaint received by Mr. Slatky, and therefore, would be at least partially redundant with other evidence in the record.  Thus, the probative value of her testimony with respect to establishing a policy or custom is relatively low when compared to the internal ACNH records detailing the potential pattern of mistreatment, which have the added value of representing ACNH's own evaluation of the incidents.  Additionally, her testimony would involve detailing the care her mother received, potentially confusing the issues for the jury given the close resemblance with the facts related to Mr. Sanford.  Therefore, the Court finds that Ms. Fontaine may not testify.

### v. Pattern and Practice Evidence

Defendants next seek to exclude all evidence of pattern or practice which might be used to establish *Monell* liability because no expert testimony exists as to the treatment of other residents. Dkt. No. 145-1 at 18.  Plaintiff argues that such an argument is "tantamount to a motion for summary judgment on Plaintiff's *Monell* claim and must be denied."  Dkt. No. 164 at 20-21. Plaintiff also asserts that they need not establish municipal liability through expert testimony.  *Id.*

Plaintiff is correct on both counts.  Ruling in favor of Defendants on this issue would, effectively, preclude Plaintiff from bringing their *Monell* claim to trial.  The Court has already ruled that Plaintiff's *Monell* claim survives summary judgment and sees no reason to revisit that decision.  *See Carlson v. Northwell Health Inc.*, No. 20 Civ. 9852, 2022 WL 1304453, at *2 (S.D.N.Y. May 2, 2022) ("A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim").  Moreover, Defendants point to no law which requires expert testimony for establishing a policy, pattern, or custom of the ACNH which could lead to the alleged violations under FNHRA.  Indeed, this Court has already held that the existing evidence "could permit a reasonable jury to find such liability."  *LaRock v. Albany County Nursing Home*, 1:19-cv-604, 2024 WL 1345312, at *17 n.12 (N.D.N.Y. Mar. 29, 2024).  Therefore, evidence of Defendants' pattern or practice is admissible.

### vi. Larry Slatky's Income, Salary, and/or Political Contributions

Defendants next seek to preclude any evidence or reference to Defendant Slatky's salary, income, political contributions, or previous charges, as well as ACNH's finances and any and all newspaper articles pertaining to any Defendant and/or the subject incident. Dkt. No. 145-1 at 20. Defendants argue newspaper articles constitute impermissible hearsay.  Plaintiffs assert they don't intend to introduce any such evidence of newspaper articles but do insist that separate evidence of

ACNH's finances is admissible.  Dkt. No. 164 at 22.

Plaintiffs are not permitted to introduce any of the evidence listed above beyond evidence of ACNH's finances.  Evidence of ACNH's finances is admissible as relevant to and probative of Plaintiff's *Monell* claim so long as the evidence is not included in a newspaper article.  As part of her claim for municipal liability, Plaintiff may present evidence that ACNH's cost-cutting measures were the moving force behind Mr. Sanford's treatment and the deprivation of his rights. *See Ceperano v. Suffolk Cnty. Dep't of Health*, 485 Fed. Appx. 505, 508-09 (2d Cir. 2012) (vacating dismissal of *Monell* claim where plaintiff "alleged a government custom or policy as required by *Monell*," in that he claimed that "the [Suffolk County Department of Health] has adopted a custom of denying adequate medical care to inmates for the purpose of saving money."); *Burns v. Rensselaer*, No. 9-19-cv-00701, 2021 WL 1091558 (N.D.N.Y. Mar. 2, 2021) (noting that "a profit or cost-saving motive can serve as the basis for a *Monell* claim").  Evidence of ACNH's finances is probative insofar as the evidence suggests ACNH was motivated to implement cost-saving measures.

### vii.   References to Other Litigation Involving Defendants

Defendants next argue that all evidence of other litigations involving Defendants should be excluded as irrelevant and unduly prejudicial under FRE 403.  Dkt. No. 145-1 at 23.  Defendants also argue that, to the extent that such evidence is relevant to Plaintiff's *Monell* claim, the lack of expert testimony attesting to the other cases' similarity with the standard of care applicable in the present case negates any probative value.  *Id.* at 24.  Plaintiff argues that such evidence is allowed to prove their *Monell* claim in federal court.

The Court finds that evidence of prior lawsuits is admissible for the sole purposes of proving the existence of a municipal custom, policy, or practice.  The evidence of prior lawsuits

may not be introduced for the purpose of showing propensity or assessing the merits of the claims therein, and the jury will be instructed to limit its consideration of such evidence accordingly. Such municipal custom, policy, or practice may be proven by illustrating that the municipality was deliberately indifferent to the harms caused by recurring situations. *See Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 293 (E.D.N.Y. 2022) ("Municipal liability can also be based on a showing of 'deliberate indifference' to a recurring situation likely to result in a constitutional violation") (citation omitted). Therefore, evidence of prior lawsuits against Defendants is probative as to whether the municipality was deliberately indifferent to, and put on notice of, its alleged policy failures and customs and practice of mistreating patients. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986). The cases' probative value far outweighs any prejudice, especially when paired with a jury instruction to consider the evidence only in relation to the *Monell* claim.

The Court also finds that the lack of expert testimony relating to the other litigations does not bar admissibility. The surviving *Monell* claim is for violations of Mr. Sanford's rights under FNHRA. The *Monell* claim is not tied to the medical malpractice claims against the individual Defendants. Therefore, the applicable standards of care across the various cases are of no importance. The jury need not find that the medical malpractice merits of the other cases match the medical malpractice merits of this case. Indeed, the jury will be instructed not to consider the evidence in relation to the medical malpractice claim. Instead, the other cases should be presented merely to support the notion that the municipality was aware of its allegedly deficient policies, practices, or customs. Prior to introducing this evidence, the Court requires a proffer where Plaintiff must explain the manner in which she intends to introduce the evidence and how that presentation complies with this Order's requirement that the evidence be tailored to supporting the

notice component of a *Monell* claim.

### viii.   Georgia Persky Expert Testimony

The parties agree that Georgia Persky may not testify as to causation.  *See* Dkt. 145-1 at 26; Dkt. No. 164 at 24.

### C.  Defendants' Motion to Quash

Finally, Defendants move to quash the trial subpoenas of Marianne Novak and Sue Wyld. Dkt. No. 144.  The Court denies the motion.  The Court has already ruled that the privilege afforded under Section 1396r(b)(1)(B) and the analogous state laws is inapplicable.  Therefore, Defendants lack standing to quash the third-party subpoenas.  *U.S. v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000).  Moreover, even if the privilege were to apply, Defendants point to no law which justifies precluding the entire testimony of a witness based on such a privilege.  Indeed, construed generously, the alleged privilege covers only records "generated by or at the behest of a quality assurance committee for quality assurance purposes."  *Jane Doe*, 99 N.Y.2d at 44.  To the extent such a privilege would bar testimony regarding quality assurance records and the conclusions reached therein, it would not bar the witness's testimony on other topics simply by reason of the fact that they were involved in the quality assurance process.

## IV.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion *in limine*, Dkt. No. 145, is **GRANTED in part and DENIED in part**, as set forth in Section III(B) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion to quash, Dkt. No. 144, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion *in limine*, Dkt. No. 149, is **GRANTED in part, DENIED in part**, **and reserved in part,** as set forth in Section III(A) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 24, 2024
      Albany, New York

Anne M. Nardacci
U.S. District Judge